Charles K. Brackett, Plaintiff-Appellee, v. Bernice E. Osborne, Defendant-Appellant.

Gen. No. 11,791.

Second District, Second Division.
December 17, 1963.

O'Brien, Burnell, Puckett & Barnett, all of Aurora (Wilson D. Burnell, of counsel), for appellant.

Brittain, Morgan, Brittain and Ketcham, all of Elgin (William R. Ketcham and W. Ben Morgan, of counsel), for appellee.

CROW, P. J.

The defendant, Bernice E. Osborne, appeals from a judgment entered in the City Court of Elgin, in the amount of $15,000, on the verdict of a jury in favor of the plaintiff, Charles K. Brackett, in an action to recover damages for personal injuries allegedly caused by the defendant's negligence on June 23, 1961 in backing her automobile into a scaffold from which the plaintiff and another employee were painting the defendant's parents' home, causing the scaffold to tip and the plaintiff to fall to the ground. The defendant's post trial motion for judgment notwithstanding the verdict, or a new trial was denied, and a judgment entered on the verdict. Motions by the defendant for directed verdict at the close of the plaintiff's evidence and of all the evidence had been denied.

It is alleged in the complaint that on June 23, 1961, the plaintiff was painting a house, located at 329 North Worth Avenue, in Elgin, where the defendant resided; the plaintiff was exercising due care for his own safety; the plaintiff was standing upon a scaffold supported by two ladders; the defendant owed a duty to the plaintiff to exercise due care so as not to injure him; the defendant knew or should have known of the location of the ladders and the plaintiff's presence

thereon; the defendant negligently backed her automobile on said premises, without keeping a proper lookout, so as to collide with one or both ladders supporting the scaffold, causing the scaffold to collapse, and throwing the plaintiff to a cement patio, injuring him as a direct and proximate result. The answer of the defendant, as amended, denied the allegations of her negligence, the plaintiff's due care, and that the injuries were a proximate result of her negligence, and further said that the plaintiff knowingly erected or assisted to erect the ladder or scaffold in an unsafe, unsuitable and improper manner. The plaintiff's reply denied the affirmative allegations of the answer, as amended, and denied the Illinois Scaffolding Act has any application.

The defendant's theory is that the Illinois Scaffolding Act, or Structural Work Act, Ch 48 Ill Rev Stats 1961, par 60 ff., creates a new duty for persons erecting a scaffold and required the plaintiff to erect the scaffold in a safe, suitable and proper place and manner, and if the plaintiff failed to erect the scaffold in a safe, suitable and proper place and manner, the plaintiff was guilty of wilful and wanton misconduct, as a matter of law, and cannot recover from the defendant on a complaint alleging only negligence. It is urged by the defendant, based on that theory, that the Trial Court erred in giving a certain instruction tendered by the plaintiff (plaintiff's instruction 7) and in refusing certain instructions (defendant's instruction 12, and alternative instructions 14a, or b, or c) and in refusing both of two alternative special interrogatories tendered by the defendant. And the defendant argues that the verdict is against the manifest weight of the evidence, and that the Trial Court should have directed a verdict for the defendant or granted a new trial. Although it is not a part of her theory of the case, one of the defendant's points also

is the Court abused its discretion in excluding certain photographs, her offered exhibits 1–6, offered as evidence by her.

The plaintiff's theory is that this is an ordinary common law action, and the Illinois Scaffolding Act, or Structural Work Act, has no application; the ordinary rules of negligence on the part of the defendant and freedom from contributory negligence on the part of the plaintiff apply; the Trial Court did not err in refusing instructions and special interrogatories tendered by the defendant which were based on the Scaffolding Act, or Structural Work Act, or in giving the instruction complained of which was tendered by the plaintiff; there was no error in refusing to admit the defendant's posed photographs in evidence; and the questions of negligence and due care were for the jury and there was no error in refusing to direct a verdict or grant a new trial.

The evidence is substantially as follows: the plaintiff and a fellow employee, Gust Rosenquist, painters, were employed by the C. E. Jakes Painting Company, which was painting the house owned by and where the defendant's parents resided, in Elgin. The defendant and her husband resided there with her parents. On June 23, 1961, and for some days prior thereto, the plaintiff and his fellow employee were and had been painting this residence, at the direction of the C. E. Jakes Painting Company. The defendant knew this, had observed their progress, and saw them on the particular day in question. The house being painted is located on the east side of a north-south street, facing west. A driveway about 8' wide extends easterly along the north side of the house to a two car garage located at the rear or east end of the premises. The drive widens out to the rear of the house to afford access to the two car garage. There is a rear sidewalk a few feet back of the house extending south from the

driveway to rear steps leading up to the rear entrance. That walk extends into a concrete patio at the rear and across part of the rear of the house. There is a hedge along the north edge of the driveway, which was rather high and bushy at the time. The south edge of the driveway is close to the house. There is just enough room for an auto to travel without scraping the house. There was a rather large lilac bush at the northeast corner of the rear of the house, which was in foliage at the time. The driveway makes a moderate southeast angular turn beginning about the rear walk and extending to the garage.

On the day in question the defendant had earlier driven away from the house and at that time the painters were painting the south side of the house. The defendant then returned at noon. The driveway at that time was clear of any scaffolds or ladders. The defendant parked her car on the drive at the rear. Its rear bumper was, according to the defendant, possibly on a line somewhere between the east side of the house and the rear sidewalk, though its exact position on the drive longitudinally (east-west) and laterally (north-south) is somewhat uncertain. The defendant said her recollection of where she stopped is based on what she customarily did, and customarily she stopped so she could get out right by the rear sidewalk. She did not know how close it was to the north or south sides of the driveway. The plaintiff said it was east and to the north of the rear sidewalk. Mr. Rosenquist said it was about two feet north of the sidewalk (not right at the south edge of the driveway). She went in the house by the rear door. Her car was parked on a slight angle towards the southeast.

After lunch the painters put up a scaffold by placing two six foot ladders with a plank across and between them which extended north and south along a part of

the back or east side of the house in the area of the rear door and at the northeast corner of the rear of the house. The south ladder was sitting on the cement patio. The north ladder was pushed as far into the lilac bush at that point as it could be and was partly covered by the bush though the plaintiff says all of that ladder could be seen. The plank was laid on steps of the supporting ladders behind the bush, between the bush and the house. The bottom of the legs of the north ladder extended from six inches to less than twelve inches onto the driveway. Mr. Rosenquist said the reason it was partly on the drive was that the lilac bush was in the way. The north ladder legs were about three or four feet or so from or west of the rear bumper of the defendant's automobile. Before mounting the scaffold the plaintiff inspected both ladders and saw that the north legs of the north ladder extended 6 inches onto the driveway. The ladders and plank were in good shape. There had been no difficulty with them prior to the accident.

While the defendant was in the house, and after their lunch hour, the plaintiff and Rosenquist commenced to paint from the scaffold. The defendant thereafter attempted to leave the house by way of the back door but observed the scaffold plank extending across the back door blocking that exit. She observed the plaintiff and Rosenquist on the plank, above ground level. She knew where the scaffold was. She did not see the ladders. She commented "Well, I guess I'll have to go out the other way, I can't get out here." She said she did not before the accident see the north ladder or that the bottom legs extended onto the driveway. She did not know the north end of the scaffold was supported by a ladder. She did not look to see if there was a north ladder or if its legs were on the driveway.

446

She left the house by a side door on the north side, got in her car, and backed it two or three feet, or so, when the right rear bumper struck or scraped the north ladder supporting the scaffold. She stopped. The ladder tipped against the east side of the house, the plank shimmied or tipped, and the plaintiff fell from the scaffold to the east to the cement patio extension of the rear walk and injured his right foot. The ladder was not broken. The plaintiff had placed no barricades across the driveway or made any other effort to warn the defendant that the bottom legs of the north ladder extended partly onto the driveway. She gave no warning she was backing her car. There was room to back without striking the ladder.

The plaintiff and Rosenquist testified that when the defendant left the house to get in her car to back out she first stopped at the northeast corner of the house to talk with them a few minutes and that she was within a foot of the north ladder and looking right at it. She did not remember talking with them, —though she said she might have passed the time of day,—and said she'd walked directly down the drive on the left side of her car and got in.

While backing she looked to the left rear along the north edge of the driveway out the driver's window. From there she did not see the ladder legs extending onto the drive on the south edge.

The defendant made an offer of proof that during the trial she had attempted to recreate the physical conditions as they were at the time of the accident, and had taken certain photographs thereof, defendant's exhibits 1–6, for identification, which she offered in evidence. They indicated, in different views, the defendant's car parked on the rear drive, a stepladder near the northeast corner of the house, some of the area in which the accident took place, and views to

447

the left rear from the driver's window of her car. The Court sustained objections to this offer and to the offered exhibits. Two other photographs by the defendant, her exhibits 7 and 8, of the general scene of the accident, taken shortly afterwards, were admitted in evidence.

The plaintiff's given instruction No. 7 of which the defendant complains was:

> "The Plaintiff has the burden of proving each of the following propositions:
>
> First, that the Plaintiff before and at the time of the occurrence was using ordinary care for his own safety;
>
> Second, that the Defendant acted or failed to act in one of the ways claimed by the Plaintiff as stated to you in these instructions and that in so acting or failing to act the Defendant was negligent;
>
> Third, that the Plaintiff was injured;
>
> Fourth, that the negligence of the Defendant was a proximate cause of the injury to the Plaintiff.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the Plaintiff, but, if, on the other hand you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendant."

The defendant's refused instruction No. 12 of the refusal of which the defendant complains was the same as plaintiff's given instruction 7 except it had an additional paragraph Second, reading as follows:

"Second, that the plaintiff did not knowingly erect the ladder or scaffold in question in an unsafe, unsuitable or improper manner."

And it renumbered the paragraphs Second through Fifth.

The defendant's refused alternative instructions Nos. 14a, 14b, and 14c of the refusal of all of which the defendant complains were similar and each referred particularly to the Scaffolding Act, or Structural Work Act. The defendant's refused instruction 14a, for example, was:

"Defendant's Instruction 14–a

There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

'All scaffolds, ladders, or other mechanical contrivances erected by any person in this State for the use in the painting of any house shall be erected and constructed in a safe, suitable and proper manner and shall be so erected and constructed and placed as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon.'

If you decide that the plaintiff knowingly erected or constructed the scaffolds and ladders in question in this case in violation of the statute on the occasion in question, then you may consider that fact, together with all the other facts and circumstances in evidence, in determining whether or not the plaintiff was negligent before and at the time of the occurrence."

449

The defendant's refused alternative special interrogatories of the refusal of both of which the defendant complains were:

"You are instructed to answer yes or no to the following interrogatory:

Were the scaffolds and ladders on the occasion in question erected and constructed in a safe manner and so placed as to give proper and adequate protection to the limb of any person or persons employed or engaged thereon?

Answer . . . . . . . . . . . .

You are instructed to answer yes or no to the following interrogatory:

Were the scaffolds and ladders on the occasion in question erected and constructed in a safe place and manner so as to give proper and adequate protection to the limb of any person or persons employed or engaged thereon?

Answer . . . . . . . . . . . ."

The defendant's contentions that if the plaintiff failed to erect the scaffold in a safe, suitable, and proper place and manner, under the Scaffolding Act, or Structural Work Act, ch 48 Ill Rev Stats, 1961, par 60 ff., the plaintiff was guilty of wilful and wanton misconduct and cannot recover from the defendant on a complaint alleging only negligence, that the giving of the plaintiff's instruction 7 was error, that the refusal of the defendant's instruction 12 and her alternative instructions 14a, or b, or c, was error, and that the refusal of the defendant's alternative special interrogatories was error, may all be considered together. The plaintiff's given instruction 7 is a well known, standard instruction, approved in Illinois Pattern Jury Instructions, Civil, No 21.02, p 117, and

450

frequently given. See: Paulissen v. Jonas (1941) 311 Ill App 346, 35 NE2d 958. The defendant's only objection to it is that it should have contained an additional paragraph substantially to this effect: "that the plaintiff did not knowingly erect the ladder or scaffold in question in an unsafe, unsuitable or improper manner." The defendant's refused instruction 12 is identical to the plaintiff's given instruction 7 except it contains, paragraph second, that additional language "that the plaintiff did not knowingly erect the ladder or scaffold in question in an unsafe, unsuitable or improper manner." That phraseology comes from the Scaffolding Act, or Structural Work Act. Each of the defendant's refused alternative instructions 14a, 14b, and 14c, referred and related specifically to that Act. And the phraseology of the defendant's alternative special interrogatories comes from that Act.

The title of the Scaffolding Act, or Structural Work Act, ch 48 Ill Rev Stats, 1961, par 60 ff., is "An Act providing for the protection and safety of persons in and about the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures, and to provide for the enforcement thereof." It was enacted in 1907. Under the act, so far as need now be considered, ". . . all scaffolds, . . . ladders, . . . erected or constructed by any person, firm or corporation . . . for the use in the . . . painting of any house . . . shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, . . ." (par 60); and "any owner, contractor, subcontractor, foreman or other person having charge of the . . . painting of any building . . . shall comply with all the terms thereof, (meaning this Act) . . . : For any injury to person . . . , occasioned

451

by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; . . ." (par 69).

The words of this statute should be construed to give effect to the legislative intention, which must be ascertained not only from the language of the entire act, but from the evil to be remedied and the object to be attained; as its title signifies, the act endeavored to give protection to workmen engaged in structural work by requiring certain standards for such work, and by providing both criminal penalties and civil liability for failure to comply therewith; the statutory purpose was to prevent injuries to persons employed in this dangerous and extrahazardous occupation, so that negligence on their part in the manner of doing their work might not prove fatal; the doctrines of assumed risk by the employee and contributory negligence by the employee have no application to the Act; the Act, originally enacted to give some protection to structural workers engaged in extrahazardous work at a time when there was no Workmen's Compensation Act, is frequently in the present day relied upon as an additional remedy against third persons, when applicable; the legislature intended to hold liable those named persons who are in charge of the work (par 69), and the words "or other person" were included to cover the situation where someone other than the named persons was in charge of the work, in order to prevent such person from escaping liability,—the person in charge of the work is responsible regardless of whether such is the owner, contractor, subcontractor, foreman, or other person having charge of the building project: Gannon v. Chicago, M., St. P. & P. Ry. Co. (1961) 22 Ill2d 305, 175 NE2d 785.

The object to be attained by this statute was to prevent injuries to persons employed in this dangerous

and extrahazardous occupation, so that negligence on their part in the manner of doing their work might not prove fatal: Schultz v. Henry Ericsson Co. (1914) 264 Ill 156, 106 NE 236. Contributory negligence and assumed risk are not defenses thereunder: Fetterman v. Production Steel Co. of Illinois (1954) 4 Ill App2d 403, 124 NE2d 637.

In Bryntesen v. Carroll Const. Co. (1962) 36 Ill App 2d 167, 184 NE2d 129, affirmed (1963) 27 Ill2d 566, 190 NE2d 315, Bryntesen, the deceased injured employee, had, with one Larson, the foreman, put up the float scaffold involved, which had been constructed and brought to the job site by their employer, Cragin Construction Co., the structural steel subcontractor, and from which Bryntesen fell. The widow of the employee recovered a judgment against Carroll Construction Co., the general contractor, and this was affirmed. It was held it was not error to refuse a defendant's instruction that if the jury found Bryntesen also knowingly and wilfully violated the Scaffold Act he could not recover, and the Appellate Court said, p 186: "Bryntesen was not a person having charge of the erection of the building. He was one of the persons the Act was intended to benefit. To hold that a worker's wilful violation of the Act would be a bar to recovery, would render the Act unenforceable."

And in Rimmke v. Gierich (1948) 335 Ill App 125, 81 NE2d 221, Rimmke, the injured plaintiff, was a tenant in the defendants Gierich's Building. Rimmke and one of the defendants and another party erected a scaffold in the building so it could be redecorated. One of the planks broke and the plaintiff, who was working on the redecorating, fell and was injured. The Court held a defendants' peremptory instruction to find them not guilty because the construction of the scaffold was a joint venture, the plaintiff and de-

453

fendants were joint tort feasors, and neither has an action against the other, was properly denied, and said, pp 127–128—". . . this is a statutory action for a violation of which, gives the injured party a cause of action."

The present case is not an action under the Scaffolding Act, or Structural Work Act. The plaintiff's complaint makes no reference thereto and alleges no right or cause of action thereunder. There is no counterclaim or other proceeding by the defendant alleging any right or cause of action thereunder. The defendant's original answer made no reference to the Act or any of its provisions. Only by an amendment to her answer at the conclusion of the trial to the effect that "the plaintiff knowingly erected or assisted to erect the ladder or scaffold in an unsafe, unsuitable, and improper manner" did the defendant allude to any of the provisions of the Act.

The defendant's argument is, briefly, that this statute creates a statutory duty on this plaintiff employee workman (of which statutory duty this defendant may take advantage or benefit) to erect the scaffold in a safe, suitable and proper manner and place, separate and apart from his common law duty to exercise ordinary care, and if it were knowingly erected in an unsafe, unsuitable or improper place or manner, that statutory duty has been violated, and such violation is contributory wilful, wanton, and intentional misconduct, and this plaintiff cannot recover against this defendant in this action on a complaint alleging only negligence by the defendant.

The argument is not consistent with the title of the Act,—*"An Act Providing for the Protection and Safety of Persons in and about the Construction, Repairing, . . . (etc.) of Buildings . . . (etc.)."* It misses the mark as to the object, purpose, and intent of the statute, which is to give some protection to

454

workman in structural work and to prevent injuries to persons employed in such extrahazardous occupation. The plaintiff employee workman agent was not the owner, contractor, subcontractor, foreman or other person having charge of the painting of this house, within the meaning of the Act. He was not in charge of the work, under the Act. Apparently C. E. Jakes Painting Company, the plaintiff's employer and principal, was the contractor or other person having charge of the painting, within the meaning of the Act,—that company was in charge of the work,—and it was required to comply with all the terms thereof,—not the plaintiff. The plaintiff was a person employed or engaged on the scaffold or ladders for whose proper and adequate protection the same were to be erected, and to whom, as the party injured, a right of action was to accrue for any direct damages for any injury to his person occasioned by any wilful violation of the Act, if there were any, against the contractor or other person having charge of the painting,—apparently C. E. Jakes Painting Company. There is nothing in the Act to indicate a defendant in the position of this defendant in this kind of case,—a case unrelated to the statute, and a type of defendant unmentioned in the statute,—is in a position to take advantage or benefit, under these facts and circumstances, from an alleged statutory duty of this plaintiff employee workman agent thereunder even if there were any such statutory duty on him, which we think there is not. If, as had been held, alleged assumed risk by the plaintiff employee workman agent, or his alleged contributory negligence, or his personal participation in erecting the scaffold, or even his own alleged wilful violation of this Act, would not be bars or defenses in a direct action by the plaintiff under and based on the Act, surely those same factors as related to his claimed duties under this Act do not become statutorily created

455

bars or defenses in an entirely separate, distinct, un-related, collateral action such as this present case which has no other connection with that Act.

■ Accordingly, we think that Act has no application in this case. This is simply a common lawsuit for damages for personal injuries based on alleged negligence, alleged proximate cause, and alleged freedom. from. contributory negligence. The plaintiff's given instruction 7 was proper, the refusal of the defendant's instruction 12 and her alternative instructions 14a, b, and c, was not error, and the refusal of the defendant's alternative special interrogatories was not error. As to the tendered special interrogatories, this may additionally be said. Under Section 65 of the Civil Practice Act, Ch 110 Ill Rev Stats 1961, par 65,—"The jury may be required by the Court, and must be required on request of any party, to find specially upon any material question or questions of fact stated to them in writing." A special interrogatory thereunder must call for a finding of a relevant ultimate fact, and not for a finding of an evidentiary fact: Pressley v. Bloomington Light Co. (1916) 271 Ill 622, 111 NE 511; City of Beardstown v. Clark (1903) 204 Ill 524, 68 NE 378; Chicago City Ry. Co. v. Taylor (1897) 170 Ill 49, 48 NE 831. Under the circumstances, the Scaffolding Act, or Structural Work Act having no application here, the tendered special interrogatories did not call for a finding of a relevant ultimate fact, but for a finding of an evidentiary fact, and were not proper. The facts and circumstances as to the matters referred to in the tendered special interrogatories were entirely relevant and admissible on one or more of the common law issues, and were, of course, gone into by the parties and considered by the jury, but the interrogatories did not relate to a relevant ultimate fact in this common law case.

456

■ With regard to the defendant's offered exhibits 1–6,—certain photographs taken in the course of the trial,—objections to which were sustained and which were excluded,—the lilac bush at the northeast corner of the house, which appears in 1–4, was not in the same condition at the time the pictures were taken as at the time of the accident,—it was more in foliage and bushier at the time of the accident and had been trimmed some since. The hedge row along the north edge of the driveway, which appears in 1 and 3–6, was not in the same condition at the time of the pictures as at the time of the accident,—it was considerably higher and bushier at the time of the accident and had also been substantially trimmed and shortened since, by comparison with defendant's admitted exhibit 7, another picture of the drive taken shortly after the accident. The ladder, which appears in 1, 2, and 4 was not the same ladder as was present at the time of the accident,—it is one which was in the defendant's parents' garage. Nos. 5 and 6 are views from the driver's window of the defendant's car looking to the rear down the north edge of the driveway and their relevancy and materiality are not clearly apparent. The defendant's car, or views of portions of it, are in all the offered exhibits. It appears to be parked right on or very close to the south edge of the drive. The rear bumper appears to be on a line somewhere between the east side of the rear of the house and the west edge of the rear sidewalk. About ½ the length of the car, from the front edge of the rear door on back, appears to be across the rear sidewalk, i. e., across where the walk abuts the drive. In taking the pictures the defendant said she had parked her car at approximately the same position she thought it was at the time of the occurrence,—"as close to the actual position as I could recall," although she also said it seemed to her

the car was "back a little further." She did not explain what she meant by "back a little further,"—whether back west towards the house a little farther, or back east towards the garage a little farther. At another place she said she did not know how close the car was to the north or south sides of the driveway. The plaintiff said, in part, in referring to one of these offered exhibits that the car was further to the east,—past the rear sidewalk, and north of the walk. Mr. Rosenquist said, in part, the car could have been further east, and at another place he said it was about 2 feet north of the rear walk (not right at the south edge of the drive).

Under the circumstances, considering all the evidence and the indefinite and somewhat contradictory nature of some of it on significant points, the photographs concerned are, in material aspects, not shown to have been taken as to correctly exemplify the actual situation, circumstances, and surroundings at the time of the accident,—in important respects the situation and surrounding circumstances were subject to change and the photographs were not taken at the time of or soon after the accident or when the situation and surroundings were unchanged. There was no abuse of discretion or error in excluding them: Chicago & E. I. R. Co. v. Crose (1905) 214 Ill 602, 73 NE 865; Goertz v. Chicago & N. W. Ry. Co. (1958) 19 Ill App2d 261, 153 NE2d 486; People v. Crowe (1945) 390 Ill 294, 61 NE2d 348.

 We think there is in the record competent evidence which, standing alone and taken with all its reasonable intendments and inferences most favorable to the plaintiff, tends to prove the material elements of his case, and hence the Court did not err in denying the motions of the defendant for directed verdict and the post trial motion to the extent it requested a judgment notwithstanding the verdict: Lindroth v.

Walgreen Co. (1950) 407 Ill 121, 94 NE2d 847. Nor do we consider the verdict contrary to the manifest weight of the evidence or that there was any error in denying the post trial motion to the extent it requested a new trial: Kahn v. James Burton Co. (1955) 5 Ill2d 614, 126 NE2d 836. The questions of the plaintiff's alleged due care, the defendant's alleged negligence, and the proximate cause of the plaintiff's injuries were here pre-eminently questions of fact for the jury's determination. The Trial Court, with an opportunity to observe the witnesses, considered these same matters on three different occasions,—at the close of the plaintiff's evidence, at the close of all the evidence, and on the post trial motion. We are not disposed to disagree with its conclusions.

The judgment will be affirmed.

Affirmed.

WRIGHT and SPIVEY, JJ., concur.