HAROLD DASENBROCK et al., Plaintiffs-Appellees, v. SERSTEL COMPANY et al., Defendants-Appellants and Third-Party Plaintiffs (H. W. Kroeger Erection Construction Company, et al., Third-Party Defendants; H. W. Kroeger Erection Construction Company, Fourth-Party Plaintiff; Davey McKee et al., d/b/a McKee-Otto, Fourth-Party Defendant).

Fifth District   No. 5—85—0581

Opinion filed January 29, 1987.

Edward J. Szewczyk, of Donovan, Hatch & Constance, P.C., of Belleville, for appellant Koppers Company, Inc.

Stephen W. Thomson and Teresa E. Kessler, both of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellant Serstel Company.

Rex Carr and Charlene Novick, both of Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellees.

JUSTICE JONES delivered the opinion of the court:

The plaintiffs, Harold Dasenbrock and Terri Lynn Dasenbrock, brought suit, occasioned by personal injury suffered by Harold Dasenbrock, against the defendants, Serstel Company (Serstel) and Koppers Company, Inc. (Koppers). Harold Dasenbrock, an employee of the Granite City Steel Company (Granite City) was injured in a fall of about 25 feet on March 10, 1980, at the site of construction of a battery of coke-producing ovens on his employer's premises. Both defendants were involved in the construction in question. In count I of his second amended complaint, Harold Dasenbrock sought damages from Serstel for an alleged violation of the Structural Work Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq*.); in count III he sought damages from Koppers for an alleged violation of the Act. In counts II and IV he sought damages from Serstel and Koppers, respectively, for alleged negligence. In the remaining counts Terri Lynn Dasenbrock sought damages for loss of consortium. In this appeal we are concerned with only those counts of the second amended complaint and aspects of the litigation having to do with the Structural Work Act. None of the third-party defendants or fourth-party litigants are involved in this appeal.

In response to the motions of both Serstel and Koppers for summary judgment as to counts I and III, the trial court denied the motions and, pursuant to Supreme Court Rule 308(a) (87 Ill. 2d R. 308(a)), found that the order involved a question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order might materially advance the ultimate termination of the litigation. The trial court stated the question of law as follows:

"Whether the plaintiff, a pipefitter employed in Granite City Steel's maintenance department, who was not employed as a

construction worker nor engaged in any phase of the construction project taking place on the Granite City Steel premises and was in the construction area contrary to Granite City Steel's policy, is a protected person under the Illinois Structural Work Act (Chapter 60 [*sic*] Illinois Revised Statutes Section 60—69)."

We granted the applications of Serstel and Koppers for leave to appeal pursuant to Supreme Court Rule 308.

The relevant facts, as elicited through discovery depositions, are largely undisputed. Plaintiff fell at the site where Granite City was having one of its three batteries of coke ovens rebuilt. The construction of the battery that was being replaced, known as "Battery 'A' " or " 'A' Battery," had been under way for approximately a year when the plaintiff fell through a temporarily unprotected part of a gap 3 feet wide between battery "A" and a large platform to the west of the battery. The gap ran the entire distance between battery "A" and the platform. The purpose of the gap was, in part at least, to allow tie rods running the length of the battery to be reached for necessary loosening and tightening throughout the life of the battery. At the time the plaintiff fell, plywood was in place over the center of the gap to provide a walkway between the platform and battery "A." After construction of the battery was completed, apparently, the gap was covered with heavy steel plates. During construction, the part of the gap through which plaintiff fell had been protected by temporary handrails that had been removed just prior to his fall to permit passage of a "larry car" from the platform to the west of battery "A," where the car was being constructed, to battery "A," where certain adjustments were being made upon the car as part of its construction. A "larry car" transports coal to the numerous coke-producing ovens in each battery; the car, electrically powered, moves along the top of the battery releasing coal through a number of hoppers in the car spaced to fit openings into the ovens in the battery. Serstel was responsible for constructing the coke ovens of battery "A"; Koppers was responsible for constructing the "larry car."

In his deposition Harold Dasenbrock stated that his job at Granite City entailed the "[m]aintenance and repair of equipment, hydraulic lines, steam lines, water lines. If it went through pipe I took care of it." He said that about two weeks before he fell, he had gone up into the same area with his parents "[l]ooking at the different piping on the coke ovens, seeing how it was built and how the pipe was arranged to work on it, maintain it." He stated that it was part of his job to go to the larry car because "[i]t is my job to fix it so I have to

know how it operates." He had not, he said, been ordered to go to the larry car. At the larry car he intended "[t]o familiarize myself with it, to learn how it operated." He had not, he said, seen a larry car like that one because the new one "is a whole new design." He had chosen that particular time, about 8:30 p.m. on the day in question, to look at the larry car because it was "[a]s good a time as any. I had some free time." Asked, "Was there anything about its being under construction that would have facilitated your becoming familiar with the larry car as opposed to looking at it when it was completed?" he responded, "Well, it is not on the ovens, they are not hot and full of dirt. Everything wouldn't be covered up, still new and clean, easier to trace the circuits in it."

Terry Hamm, a pipe fitter employed by Granite City who was walking with and a few steps behind Harold Dasenbrock when the latter fell, stated on deposition that he and the plaintiff had been "encouraged" to go up on battery "A" "because we were going to be working on this equipment once it was in production." Asked, "What exactly did they encourage you to do?" the witness answered, "Well, to just go up there and get a general idea of the differences in the new equipment as opposed to the old and get some sort of idea on the type of equipment we were going to be maintaining." Asked, "Why did you and Harold go that particular day to this larry car—or this particular evening?" the witness responded, "We had just been discussing between ourselves the difference in the new machinery as opposed to the old and other than that there was no particular reason." Asked if there had been any suggestions as to when to look at the larry car, the witness answered, "Whenever we get the chance. If we had some spare time, we didn't have a job or something, go up there and look."

Certain of the deponents indicated that upon completion of the larry car, the supplier of the car would, and did, conduct classes concerning maintenance of the car for those, like the plaintiff, who would be engaged in its maintenance. Witnesses indicated further that the plaintiff could have gained no information by viewing the larry car that would not have been provided in the classes. Several of the deponents stated that "production" workers, like the plaintiff, were not permitted to be on the construction site and were to have been warned to stay away from it.

The plaintiffs maintain that Harold Dasenbrock is a member of the class of persons intended by the legislature to be protected by the Structural Work Act, the relevant portion of which provides:

"That all scaffolds, hoists, cranes, stays, ladders, supports, or

other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1985, ch. 48, par. 60.)

The plaintiffs contend that the trial court properly denied the defendants' motions for summary judgment because Harold Dasenbrock was covered by the Structural Work Act by virtue of being "involved in" or "concerned with" the construction under way at the time of his fall. Plaintiffs rely in part on the language pertaining to the title of the Act, which states that the Act is to provide for the protection and safety of persons "in and about" the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures.

■ As the supreme court pointed out in *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 317-18, 175 N.E.2d 785, 791-92, in a summary of the history of the Act:

"[T]he Scaffold Act endeavored to give protection to workmen engaged in structural work by requiring certain standards for such work, and by providing both criminal penalties and civil liability for failure to comply therewith. The statutory purpose, as interpreted in the early *Schultz* case (*Schultz v. Ericsson Co.* [1914], 264 Ill. 156, 164) was 'to prevent injuries to persons employed in this dangerous and extrahazardous occupation, so that negligence on their part in the manner of doing their work might not prove fatal.' "

Thus, the Structural Work Act protects work activities of a particularly hazardous nature and is designed to lessen the extent of the danger. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 302 N.E.2d 64.) In *Gannon* the court made plain that a liberal construction of the Act is necessary to carry out the clear legislative purpose. (*Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 263 N.E.2d 817.) The Act is, therefore, to be given a liberal construction to effectuate its purpose of protecting persons in the extrahazardous occupations of working in and about the construction, repair, alteration, or removal of structures. (*McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573; *Simmons v.*

*Union Electric Co.* (1984), 121 Ill. App. 3d 743, 460 N.E.2d 28, *aff'd* (1984), 104 Ill. 2d 444, 473 N.E.2d 946.) However, liberal construction cannot extend the statutory protection to all classes of persons and all types of situations. (*Grant v. Zale Construction Co.* (1982), 109 Ill. App. 3d 545, 440 N.E.2d 1043; see *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 428 N.E.2d 1051.) To determine whether an individual falls within the class of persons protected by the Act, courts have attempted to ascertain whether his or her actions were connected with, and significantly furthered, one of the activities enumerated in the Act; if his or her actions, seen in a broad context, are not an integral part of the erection, repairing, alteration, removal, or painting of a structure, the individual is not covered by the Act as a matter of law. See *Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 460 N.E.2d 28.

The plaintiffs rely heavily upon *Bennett v. Musgrave* (1970), 130 Ill. App. 2d 891, 266 N.E.2d 128, and *Quinn v. L.B.C., Inc.* (1981), 94 Ill. App. 3d 660, 418 N.E.2d 1011, which cases plaintiffs describe as "dispositive of the question of law presented by the defendants herein." In *Bennett* employees of the defendants were erecting a building when the defendant asked the plaintiff, a nonemployee, to check the progress of the building. Plaintiff went to the premises for that purpose, and, while he was there, a workman's wrench fell from scaffolding and struck him, thereby causing him injury. We refused in *Bennett* to make a distinction, urged by the defendant, between tools and "material" as used in the Act. The falling of material, however, is not in issue in the instant case.

■ In *Quinn* the plaintiff, an inspector for the Chicago building department, fell at a construction site. In holding that the plaintiff was within the class of persons protected by the Act, the court reasoned that the plaintiff:

> "in his role as an inspector, played a vital part in the construction process. He entered the site for the purpose of evaluating the fire's effect on the building's structural integrity. Performance of this task necessitated his presence within and upon the building. Although he was not requested by defendants to examine the structure, his participation was essential for the safety of both the workmen and pedestrians in the area. Plaintiff's occupation was dangerous in that it involved working in and about partially completed and sometimes fire-gutted buildings." (94 Ill. App. 3d 660, 662, 418 N.E.2d 1011, 1013.)

Whereas the plaintiff in *Quinn* played a vital part in the construction process, the plaintiff in the instant case played no part whatever to it.

Although he asserts that he was "involved in" or "concerned with" the construction, his involvement or concern, by his own statements, had to do only with the manner in which the larry car and, possibly, parts of the ovens were constructed for purposes of subsequent maintenance and repair once construction was completed. His actions cannot be said to have been an integral part of or to have furthered at all—much less significantly—the erection of a structure. Nor can his actions be deemed to have been an integral part of or to have furthered significantly any of the other activities enumerated in the Act. For these reasons we hold that Harold Dasenbrock is not included within the class of persons intended to be protected by the Act. We have not been invited to determine whether a "larry car" is a structure for purposes of the Act, and we need not do so. We note that in view of the circumstances here it is of no consequence to the issue presented for review whether the plaintiff was or was not in the construction area contrary to Granite City's policy.

We accordingly reverse the order of the trial court denying the motions of the defendants for summary judgment as to counts I and III of the plaintiffs' second amended complaint; we enter judgment for the defendant Serstel as to count I and the defendant Koppers as to count III of the plaintiffs' second amended complaint and remand the cause for further proceedings.

Reversed; judgment for defendant Serstel as to count I and defendant Koppers as to count III; and remanded.

HARRISON and KASSERMAN, JJ., concur.