GIL FERRER, Plaintiff-Appellant, v. SUGAR MAGNOLIA, INC., Defendant-Appellee.

First District (6th Division)   No. 1—92—3929

Opinion filed May 27, 1994.

RAKOWSKI, J., specially concurring.

Michael W. Rathsack, of Chicago (Jack L. Kramer, Montgomery W. Mackey, and Michael W. Rathsack, of counsel), for appellant.

Landau, Omahana & Kopka, Ltd., of Chicago (Gail Allyn Omahana, Timothy M. Palumbo, and Darrah Desmond Cousino, of counsel), for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

Plaintiff, Gil Ferrer, filed a single-count personal injury action alleging violation by defendant of the Structural Work Act (740 ILCS 150/1 et seq. (West 1992)). Plaintiff later obtained leave of court to amend the complaint and allege negligence. Before the complaint was amended, however, defendant, Sugar Magnolia, Inc., brought a motion for summary judgment which the court granted. The trial court found there to be no just reason to delay appeal. We have jurisdiction under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

At the time of his injury, plaintiff was employed by the owners of a multi-unit commercial building. Defendant was a lessee of the first-floor space in the building and was engaged in converting this space from a record store into a retail clothing boutique.

As part of its renovation, defendant constructed a mezzanine. Photographs in the record show that the mezzanine stood in the rear of the store and had a poured concrete floor supported by metal posts. The mezzanine was designed to give shoppers access to an "upstairs" and "downstairs" level. The obvious benefit provided by the mezzanine was that it created greater floor space to display clothing.

In the middle of the mezzanine, defendant cut two large holes which were designed to allow light to pass into the downstairs area. During the construction process, the holes in the mezzanine floor were also convenient for the workers to use when they needed to pass tools or supplies between the upstairs and downstairs areas. The holes also made it possible for the workers on the two different levels to communicate with one another. Finished railings were eventually installed around the holes, but these railings were not in place when plaintiff was injured.

Because the store had a high ceiling, workers renovating the walls and ceiling of the store used the upper area of the mezzanine to elevate themselves while they worked. At the time plaintiff fell from the mezzanine, access to the upstairs area was by a temporary wooden staircase.

As noted, plaintiff was not one of the workers hired by defendant to perform renovations on the store. Instead, plaintiff was employed by the building's owner both as a janitor and as a "porter" for the building. In his deposition, plaintiff testified that he was paid a

monthly salary for his janitorial work and received an hourly salary for his work as a porter. Plaintiff testified that his janitorial duties usually involved after-hours cleaning of the common areas of the building. During the renovation plaintiff would occasionally haul garbage out of the building from inside the renovation area when requested to do so. He was not specifically employed, however, to provide janitorial services to defendant's boutique.

Plaintiff's job as a porter required him to carry a beeper and the building's passkeys. When someone needed access to the building after hours his employer would summon him to the building to turn off the alarms and open the necessary doors.

There was a cold snap in late December of 1989. Because the store was uninsulated and had no heat during the renovation, the temperatures inside the boutique dropped. Plaintiff was called on Friday and told to meet a heating contractor at the building. When plaintiff and the contractor were unable to arrange a meeting on Friday, however, they agreed to meet one another on Tuesday after the Christmas holiday weekend. As a result of the falling temperatures in the store, however, a pipe burst.

Plaintiff's employer called him on Sunday, Christmas day, and told him to meet a plumber at the store that afternoon because a pipe had frozen and water was leaking inside. Plaintiff arrived at the store and met the plumber. Plaintiff opened the outer doors to the building and proceeded inside with the plumber in order to search for the broken pipe. Once inside, the two men could hear running water. Plaintiff and the plumber walked up the mezzanine stairs to look for the temporary lighting and the water shut off valve. The store was dark because workers had recently covered the windows with paper. On the way to the back of the mezzanine, plaintiff fell through one of the open holes and was injured on the floor below.

The issue presented is whether a plaintiff who falls through a hole in a mezzanine floor which had been used by workers for support in the renovation of a building may maintain a cause of action under the Structural Work Act, even though the plaintiff himself is not employed in the building's renovation.

Summary judgment is a proceeding by which to determine whether a material fact exists, not to try such an issue. (*Cunningham v. Addressograph Multigraph Corp.-Bruning Division* (1980), 87 Ill. App. 3d 396, 398, 409 N.E.2d 89.) When, as here, the parties agree as to the relevant facts of the case and the issue is solely the proper interpretation of a statute as applied to those facts, the question presented is one of law and disposition by summary judgment may be proper. (See *e.g.*, *Vuletich v. United States Steel Corp.* (1987), 117 Ill.

2d 417, 421, 512 N.E.2d 1223.) Review in the appellate court of a grant of summary judgment is *de novo. In re Estate of Hoover* (1993), 155 Ill. 2d 402, 615 N.E.2d 736; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102, 607 N.E.2d 1204.

The fundamental principle of statutory interpretation is to ascertain and to give effect to the intention of the legislature. (*Harvel v. City of Johnston City* (1992), 146 Ill. 2d 277, 282, 586 N.E.2d 1217; *Thomas v. Greer* (1991), 143 Ill. 2d 271, 278, 573 N.E.2d 814.) The proper starting point, therefore, in every case involving the construction of a statute is the language of the statute itself. *Castillo v. Jackson* (1992), 149 Ill. 2d 165, 175, 594 N.E.2d 323.

The terms of the Structural Work Act (Act) provide in pertinent part:

> "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed \*\*\* for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon \*\*\*." (740 ILCS 150/1 (West 1992).)

Section 9 of the Act provides a right of action for direct damages sustained by any person whose loss is the result of "wilful failure to comply" with the terms of the statute. 740 ILCS 150/9 (West 1992).

In interpreting legislation, in addition to the language of the statute itself, courts look to the evil which the legislature intended to remedy in passing the statute. (*Harvel*, 146 Ill. 2d at 283; *Brackett v. Osborne* (1963), 44 Ill. App. 2d 441, 195 N.E.2d 8.) The Structural Work Act has as its "clear legislative purpose" the protection of persons engaged in extrahazardous occupations on or near a construction site. (*Dasenbrock v. Serstel Co.* (1987), 151 Ill. App. 3d 1092, 1096, 503 N.E.2d 1106.) The Act should be interpreted in order to provide protection to those injured at a construction site because of the particular hazards associated with the uses of scaffolds and other similar types of support devices in performing one of the specific activities enumerated in the Act. *Humbert v. Palumbo Excavating Co.* (1993), 252 Ill. App. 3d 269, 274, 625 N.E.2d 21.

Plaintiff must demonstrate the following elements in order to allege a proper violation of the Structural Work Act: (1) plaintiff's injury arose from a scaffold, hoist, crane, stay, ladder, support, or other mechanical contrivance which was not erected and/or operated in a safe manner; (2) at the time of his injury, plaintiff was involved

in the erection, repairing, alteration, or removal of a building, bridge, or other structure; (3) defendant was in charge of the work; and (4) defendant willfully failed to comply with the Act. (*Rogers v. West Construction Co.* (1993), 252 Ill. App. 3d 103, 111-12, 623 N.E.2d 799.) A plaintiff's inability to produce evidence of one or more of the above elements is sufficient grounds for summary judgment. *Rogers*, 252 Ill. App. 3d at 112; *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457.

Plaintiff cites *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607, in which a labor foreman tripped and fell against a ladder, resulting in a fall through an unbarricaded chamber and into a basement. The supreme court found that liability properly attached under the Act where the chamber had previously been used by workers as a conduit for moving materials even though the plaintiff was not using the chamber for that purpose when he fell. The plaintiff in *Tenenbaum*, however, was actually employed in connection with the construction activity at the time of his injury. Moreover, plaintiff in *Tennenbaum* brought his claim under section 7 of the Act, which is not at issue here.

In *Lafata v. Village of Lisle* (1990), 137 Ill. 2d 347, 561 N.E.2d 38, the supreme court considered the facts of an appellate decision, *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, 441 N.E.2d 889. In *Prange* the appellate court addressed whether the Act applied to an injury sustained by the driver of a tractor equipped with a forklift while the tractor was transporting poles from a storage area to their place of installation. The plaintiff was injured when several poles slid from the forklift onto the operator's compartment while he was raising the forklift device. The supreme court concluded that the transport of the poles was an activity "sufficiently unique to the construction industry" and that such activity was of a "particularly hazardous nature." (*Lafata*, 137 Ill. 2d at 357.) These factors were important in the court's decision which found potential liability under the Act.

In this case plaintiff was not using the mezzanine floor "in the performance of a hazardous activity" or "as a working platform." (See *Vuletich*, 117 Ill. 2d at 423.) Nor were plaintiff's activities in leading the plumber to the broken water pipes "unique to the construction industry." (*Lafata*, 137 Ill. 2d at 358.) The facts presented establish that plaintiff was not generally involved in the renovation of defendant's boutique except to occasionally haul garbage away from the area. We reject plaintiff's claims that he was engaged at the time of his injury in the renovation of the building because the pipe would not have burst had the store not been undergoing

construction. The Act was not intended to protect everyone who happens to be injured on a construction site. Only those who actually participate in construction activity are covered by the Act's provisions. (See, *e.g.*, *Dasenbrock*, 151 Ill. App. 3d at 1098 (worker not covered by the Act where his "actions cannot be said to have been an integral part of or to have furthered *** the erection of a structure").) Because we conclude the plaintiff was not a member of the class the statute was designed to protect, we affirm the trial court's order.

While plaintiff may have a valid cause of action for negligence, he may not proceed under the terms of the Structural Work Act.

For the foregoing reasons, the circuit court's order granting defendant's motion for summary judgment is affirmed.

Affirmed.

EGAN, P.J., concurs.

JUSTICE RAKOWSKI, specially concurring:
I agree with that portion of the majority opinion which concludes that the plaintiff was not a member of the class of employees which the Structural Work Act was designed to protect. For that reason, I agree that the order of the circuit court should be affirmed.

However, assuming *arguendo* that the plaintiff was a member of the protected class, I would reverse. I do not agree with that portion of the majority opinion which holds that plaintiff was not in the performance of an activity entitled to protection.