HENRY J. PRANGE *et al.*, Plaintiffs-Appellants, *v.* KAMAR CONSTRUC-
TION CORPORATION, Defendant and Third-Party Plaintiff-Appellee.—
(Frank L. Fleming, Adm'r of the Estate of Ohren Sluder, Deceased, Third-
Party Defendant, Appellee.)

Fourth District No. 4—82—0052

Opinion filed October 28, 1982.

Grady E. Holley and John L. Swartz, both of Giffin, Winning, Lindner, Newkirk, Cohen & Bodewes, P.C., of Springfield, for appellants.

Robert E. Bradney, of Rammelkamp, Bradney, Hall, Dahman, Kuster & Collins, of Jacksonville, and Heyl, Royster, Voelker & Allen, of Springfield (Frederick P. Velde and John A. Ess, of counsel), for appellees.

.JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by plaintiffs Henry Prange and June Prange from entry of summary judgment against them in their suit against defendant Kamar Construction Corporation (hereinafter Kamar), under the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60). In the action, defendant Kamar also filed a third-party suit against Ohren Sluder, its subcontractor and plaintiff Henry Prange's employer, who is now represented by Frank Fleming, administrator of Sluder's estate. The trial court found there was no genuine issue of fact and that the tractor-forklift upon which Henry Prange was seated at the time of the accident was not instrumentality within the purview of the Structural Work Act (hereinafter Act). Accordingly, the court entered a summary judgment in favor of Kamar, based upon the Act's inapplicability, and also entered summary judgment in favor of Fleming, as against Kamar, in the third-party action. The latter judgment was premised upon the court's dismissal of the principal suit by the Pranges against Kamar. A second motion for summary judgment, filed by Fleming against Kamar and based upon an active-passive negligence theory, was denied, the court concluding a question of fact existed thereon. The Pranges appeal, arguing error in the court's rulings and judgment.

The record reveals that on December 31, 1975, plaintiff Henry Prange was employed by Ohren Sluder in Sluder's construction of a pole barn on a farm near Roodhouse, Illinois. Sluder was a subcontractor for defendant Kamar. At the time of the accident, Prange was operating a Massey-Ferguson tractor, equipped with a forklift device supplied by Kamar. On the day of the accident, Prange was operating the tractor-forklift at the construction site. He had a load of four or five 18-foot-long poles (six by six inches) on the forklift device and had raised them to an elevation above his head. The poles were being

transported from the material pile to positions near their places of installation in the barn itself. Holes, which were to receive the poles, had been previously dug, and the four or five poles carried by Prange were the last poles to be installed.

Shortly after having picked the poles from the material pile, Prange, seeking to move them to their places of installation, encountered a muddy area. The tractor-forklift had some difficulty maneuvering in the mud, and as he attempted to move through the mud, Prange raised the forklift device, which was supporting the poles. As the forklift raised, the lift device tilted backwards, depositing all but one of the poles onto the plaintiff Prange. Each pole which rolled off the device weighed somewhere between 300 and 600 pounds. Prange sustained injuries of a severe nature as a result of the accident. The tractor-forklift was not equipped at the time of the accident with a rollover protection device, or other cage for protection of the driver from injury. Neither was it equipped with an automatic leveling device, also designed for driver safety.

Deposition evidence before the court indicated that the tractor, with attached forklift, was utilized to carry the poles from where they had been stored, at one end of the site, to their places of installation within the barn. The tractor-forklift would carry the poles down the line of previously dug holes, and workers would push one end of a pole off the forklift and into the hole. The other end was then raised and the poles secured in the ground. The poles were held horizontally across the forks of the forklift and could be raised or lowered while there, as needed, for transportation and installation.

Other evidence indicated that Kamar had purchased the tractor new and had added the forklift device, as well as a chain and boom device, later. The tractor, along with the accessories, had been purchased for use in construction of the pole barns. There was other evidence indicating that the boom and chain device could have been used to transport and install the poles. However, the boom and chain could only pick up one pole at a time, thereby rendering it much slower in the installation process.

The circuit court, on motion for summary judgment by Kamar, found that the tractor-forklift upon which Prange was seated at the time of the accident was not a "mechanical contrivance" as defined and covered by the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60), and thereupon concluded that the Act did not cover and apply to the injuries suffered by Prange in the forklift accident. From the judgment, the Pranges appeal.

Section 60 of the Act states:

"That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."

The First District, in *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1090, 428 N.E.2d 1051, recently summarized the well-established rules governing Structural Work Act cases:

"The Structural Work Act is designed to protect workers engaged in extrahazardous activities from certain risks inherent in the nature of their jobs. [Citations.] Although the Act should be liberally construed [citation], it is not intended to cover all injuries that may occur on or near a construction site. [Citation.]

The elements of a cause of action under section one include the following: (1) the device involved must be one listed in the Act; (2) the device involved must be used in the construction of a building or 'other structure' within the Act; (3) the device must be unsafe, or not safely placed or operated (or there must be a failure to provide such a device); (4) defendants (those who are 'in charge of' the work) must have 'wilfully' violated the Act; and (5) plaintiff's injury must be proximately caused by defendants' violation. [Citation.]"

The principal issue in the instant case is whether the tractor-forklift operated by Prange, and upon which he was injured by the falling poles, was a "mechanical contrivance" within the meaning of section 60 of the Act. As the cases have pointed out, a decision upon whether a particular device is covered by the Act cannot be based solely on the identity of the device, apart from the actual use to which it is put in the circumstances of each case. Rather, the decision must be based upon the use and function of a device, within the circumstances shown. (*Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1093 (and cases cited therein); *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, 1026-27, 414 N.E.2d 147.) Although the Act is commonly known as the Scaffold Act, with due regard for its history, it is established that the Act applies to devices other than scaffolds, and to the functions which they serve in common with scaffolds. By

its terms, the Act applies to "hoists, cranes, stays, ladders, supports" and "other mechanical contrivances" constructed or erected for use in the construction of certain structures. As the *Urman* court noted, the essential common characteristic of the specific items listed in section 60 of the Act is that they are all support devices, either for men or materials. (101 Ill. App. 3d 1085, 1090-95.) As the court in *Matthews* put it (90 Ill. App. 3d 1024, 1026), "The common feature of these is an artificial foundation bearing a load against gravity." Thus, in deciding whether the tractor-forklift upon which Prange was injured was a "mechanical contrivance" within the Act, we must construe "mechanical contrivance" in connection with the specific items listed in section 60, and the common support function shared by all. If the tractor-forklift in this case was being used to perform a support function similar to that performed by the enumerated devices, then it would have to be classified as a "mechanical contrivance" within the meaning of the Act.

■ The defense, at the outset, argues for a narrowing of the Act. It is asserted that the Act was intended to apply only to support devices which are used to support workmen, thus to the exclusion of support devices for materials on a construction site. The defense seeks to narrow the scope of the Act to scaffold and scaffold-like devices. *Matthews* is cited in support of this argument and interpretation. Such a reading of the Act is much too narrow. It has recently been pointed out that *Matthews'* narrow construction of the Act in this regard is not supported by any case authority and runs contrary to the express language of section 60. (*Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1093-94.) As the *Urman* court correctly noted:

> "By its terms, section one provides that all 'scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances' used in constructing, or maintaining buildings or 'other structures' should be erected, placed and operated so as to protect 'persons employed or engaged thereon, *or* passing under or by the same, *and* in such manner as to prevent the falling of any material that may be used or deposited thereon.' (Emphasis added.) Two categories of persons are thus protected, those who are actually working on the support device and those who pass by or under the same. Such persons are protected from at least two types of injury—causing possibilities, the collapse or other failure of support device (*i.e.*, one that is not safely erected, placed, or operated), and the falling of 'any material' that may be used or deposited on the device. \*\*\*." (101 Ill. App. 3d 1085, 1091.)

A narrow reading of the Act, focusing upon workman support devices only, ignores that the primary function of hoists, cranes and stays is not as support for men, but rather for materials. Those devices are specifically enumerated in the Act. Furthermore, as the *Urman* quotation points out, the statutory language indicates a desire to protect workmen in, on, around and under support devices for materials on a construction site. We conclude, as did the *Urman* court, that the Act is intended to cover support devices used on a construction site, whether their purpose is to support workmen or materials. In so doing, we expressly reject the contrary suggestion in the *Matthews* case.

■■ We turn then to the facts of the instant case to determine the purpose and use to which the tractor-forklift was being put at the time of the accident. The tractor-forklift herein was being used on the construction site to support building materials, the poles, while they were transported to their places of installation. The fact that the tractor-forklift was mobile, in design and operation, does not alter its function as a support device for materials, in both design and operation. The tractor-forklift device herein utilized served the same function on this job as a boom and hoist would have, or as a crane would have. We find that its use in the instant case brought it within the definition of the term "mechanical contrivance," as used in the Act. See *Rayfield v. Homart Development Co.* (1981), 100 Ill. App. 3d 620, 427 N.E.2d 193 (traxcavator, with front bucket to lift material, found to be a "mechanical contrivance" within the Act); *Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 373 N.E.2d 1354 (crane hauling material).

The defense, in urging a contrary conclusion, relies upon the *Matthews* case, above discussed, and upon *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 263 N.E.2d 817. We have previously noted our disagreement with *Matthews'* finding that only scaffold-like devices, used for the support of workmen, are covered by the Act. The *Crafton* case, on the other hand, is distinguishable. In *Crafton*, an ironworker was riding on a tractor that was being used to move steel from a railroad siding to the construction site. During the move, he fell off the back of the tractor, injuring himself. The court, without analysis, found that the tractor was not constructed for use in the erection of a structure, adding also, that even if it were considered a "mechanical contrivance," there remained a lack of proximate cause which prevented liability. (46 Ill. 2d 533, 538.) In a later case, *Crafton* was distinguished on the basis that injury resulted from a lurch of the tractor, rather than any failure of the support device. (*McNellis v. Combustion Engineering, Inc.* (1973), 13 Ill. App. 3d 733,

742, 301 N.E.2d 96.) In *McNellis*, an unloading operation was determined to come within the scope of the Act, and in the Illinois Supreme Court opinion, the court specifically accepted the appellate court's distinction of *Crafton*. (*McNellis v. Combustion Engineering Co.* (1974), 58 Ill. 2d 146, 151, 317 N.E.2d 573.) In the instant case, the connection between the support device, the forklift, and the injuries was direct. It also needs emphasizing that in this case, the tractor-forklift (1) was on the construction site, not moving on and off the site to bring materials to the site; (2) was actually being used in the erection of the pole barn building, both for transporting material and for placement of material; (3) was alleged to be unsafe in that it failed to provide protection from objects which could fall from the forklift itself. Under these circumstances, and given the limitations upon *Crafton* in *McNellis, Crafton* is not controlling in this case.

Had the contractor chosen to do this job using a crane or hoist, as a support device, and the injuries resulted from a failure or omission related to their support functions, the Act would have applied clearly. Since the tractor-forklift was being utilized for a support function, and was otherwise within the Act's requirements, we have concluded that it was a "mechanical contrivance" within the meaning of the Act.

The defense's other argument, that Prange, as the driver, is unprotected, is not convincing. It rests upon the erroneous conclusion in *Matthews* that only workers who are on, or who should have been on support devices, are intended to be protected by the Act. We have previously discussed *Matthews*. The Act, by its terms, applies to persons "employed or engaged" upon the support devices and to those around and "under" the support devices. Prange, as the operator, is within the class of persons for whom protection was designed, and we find no sound basis for concluding that he is not to receive the Act's protection while another worker under or beside the forklift would receive protection under the Act.

The next issue is whether a summary judgment in favor of Kamar can be sustained on an alternative basis, that being that Kamar was not a person in charge of the work so as to be liable under the Act. Kamar points to facts in the record indicating that it had no representative or worker at the site where the accident occurred. Deposition testimony indicates that Kamar had no supervision over the work of the subcontractor Sluder, and that Sluder was the sole person directing erection of the building, in all facets. Kamar asserts, that as a matter of law, based upon the record, there is no liability for it since it was not in charge of the work. We note that this argument

was presented to the trial court and rejected. We, too, find it unconvincing at this point. The phrase "having charge of" has been expansively defined by Illinois courts. As the Illinois Supreme Court noted in *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 321-22, 211 N.E.2d 247:

> "The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word 'charge' in *People v. Gould* 345 Ill. 288, 323: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' *** Rather, consistent with its beneficient purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and other who have charge of the erection or alteration of any building or structure."

Whether a party had charge of the work is usually a question of fact for the fact finder. Plaintiffs assert, and we agree, that there was a genuine question of fact as to whether defendant Kamar had charge of the work, and, therefore, summary judgment for Kamar would be unavailable on that basis. We note, from the record, that Kamar was the general contractor on this job, having hired Sluder as its subcontractor for the erection of the pole barn. Kamar supplied the materials for the job, and it also furnished the tractor, forklift attachment, and hoist attachment. It was responsible for the design of the building and it ordered and had maintenance done on the equipment. There is also evidence raising a question as to the extent of supervisory authority retained by Kamar over its subcontractor. Construing the evidence in favor of the plaintiffs, as it must be on the summary judgment motion, we find a question of material fact present. Kamar was not entitled to summary judgment based upon a finding that it was not in charge of the work within the meaning of the Act.

■ The final issue concerns the summary judgment granted third-party defendant Fleming, administrator of the estate of Ohren Sluder, as against third-party plaintiff Kamar. The basis of the court's action on the third-party complaint was the fact that it had determined to dismiss the underlying, primary action by plaintiffs Prange

against defendant Kamar. The court did have before it another summary judgment motion, by Fleming against Kamar, in which Fleming asserted that judgment for it was required because Kamar, as a matter of law, on the facts, was guilty of active negligence. In its judgment order, the trial court specifically rejected that motion, expressly stating that it found the existence of a genuine issue of material fact on the question of whether Kamar's conduct was active such as would defeat any indemnity action over against Fleming. Fleming, on appeal, seeks affirmance of the third-party action on this basis, even though the trial court's dismissal of Kamar is to be reversed. It is again argued that summary judgment for Fleming, as against Kamar, is proper for the record shows that Kamar was the actively negligent party in Prange's injuries. The rules in this active-passive area are easily stated, but difficult to apply.

"Indemnity is proper when there is a qualitative distinction between the conduct of the two wrongdoers. The party who is guilty of active wrongdoing will be liable to the party who is guilty of passive misconduct. [Citations.] Additionally, the fact that a person is in charge of the work and wilfully violates the Structural Work Act does not necessarily lead to the conclusion that the person is an active wrongdoer. [Citations.]" *Badorski v. Commonwealth Edison Co.* (1980), 89 Ill. App. 3d 494, 497, 411 N.E.2d 924.

"Where indemnification is allowed based on the active-passive distinction, the indemnitor's conduct is usually characterized as the primary cause or active negligence whereas the indemnitee's conduct is considered the secondary cause or passive negligence. [Citations.] The concepts of active and passive negligence are imprecise and difficult to apply. [Citations.] 'Active' and 'passive' are terms of art which must be applied in accordance with concepts developed on a case by case basis rather than in accordance with the usual dictionary definitions of the words. [Citation.]" (*Marchi v. Indiana Harbor Belt R.R. Co.* (1980), 83 Ill. App. 3d 1005, 1008-09, 404 N.E.2d 938.)

Fleming argues that if Kamar is held liable under the Act, it will be as a result of its failure to provide protective devices for the injured plaintiff Prange, while he was operating the tractor-forklift. They point to the fact that Kamar supplied the tractor, was responsible for its regular maintenance, and would have been the party to have installed a protective device. It is asserted that Kamar's control over the tractor-forklift, in these respects, makes it the active wrongdoer, *vis a vis* Fleming, whose decedent was merely the subcontractor su-

pervising actual construction of the pole barn. It is asserted that these facts place the case in a category with other cases wherein persons furnishing a defective scaffold have been held not entitled to indemnity from another third party. (*Sack v. Arcole Midwest Corp.* (1961), 33 Ill. App. 2d 344, 179 N.E.2d 441; *Lindner v. Kelso Burnett Electric Co.* (1971), 133 Ill. App. 2d 305, 273 N.E.2d 196; *Shell Oil Co. v. Hercules Construction Co.* (1966), 74 Ill. App. 2d 166, 219 N.E.2d 392.) As has already been noted, however, the active-passive determination must be made on a case-by-case basis, looking to the circumstances of each situation. In the instant case, while Kamar furnished the tractor and its accessories for use in the construction of the pole barn, there is evidence in the record that Sluder, Fleming's decedent, had immediate supervisory authority and control over the actual construction of the pole barn. Included within that authority, according to deposition testimony, was the determination as to whether to use the boom and hoist attachment or the forklift attachment for the transportation and installation of the poles. There are evidentiary questions remaining as to duties owed by Sluder, which may have been breached. This is not a case where the only conceivable misconduct by him was a failure to discover the defect, or other similar purely passive act. Nor is it a case, like *Sack,* wherein one party furnished the scaffold, the labor, and the material, and was also fully responsible for the use of the scaffold and the erection of the building. While Kamar, as the supplier of the equipment, had the duty to furnish safe equipment, Sluder, as subcontractor in charge of its use, had duties with respect to its safe use and maintenance. We find questions of fact remaining in the record, and will not conclude that Kamar was guilty of active misconduct as a matter of law, so as to prevent the indemnity action over against Fleming.

For the reasons stated above, the summary judgments entered in favor of Kamar against the Pranges, and in favor of Fleming against Kamar, are reversed, and the causes are remanded for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

BARRY, P.J., and STOUDER, J., concur.