(No. 69181.—

DOMINICK LAFATA, Appellee, v. THE VILLAGE OF LISLE *et al.*, Appellants.

*Opinion filed July 3, 1990.—Rehearing*
*denied October 1, 1990.*

348

RYAN, J., joined by STAMOS, J., dissenting.

Thomas G. DiCianni, of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago, for appellant Village of Lisle.

D. Kendall Griffith, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellant Frank Novotny & Associates, Inc.

Daniel N. Kadjan, Hugh B. Arnold and John J. Toomey, of Arnold & Kadjan, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, Dominick Lafata, brought this action against multiple defendants in the circuit court of Du Page County, seeking to recover damages for injuries he sustained on October 21, 1985, when he was struck by an earth-moving machine known as an endloader while working at a construction site. At the time of the accident, the endloader was transporting a section of concrete pipe, suspended from a cable attached to the bucket of the endloader, from a stockpile of pipe sections located on the construction site to a place near where the pipe section was to be installed in a sewer drainage system. Plaintiff alleged in count I of his complaint a violation of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, pars. 60 through 69), and named as defendants under that count the Village of Lisle (the Village) and Frank Novotny and Associates, Inc. (Novotny). Count II of the complaint was brought against different defendants and is not relevant here. The trial judge granted the Village's and Novotny's motions for summary judgment, concluding that the endloader was not a mechanical contrivance within the contemplation of the Structural Work Act. The appellate court reversed the

judgment of the trial court and remanded the cause for further proceedings. (185 Ill. App. 3d 203, 207.) We granted the Village and Novotny's petition for leave to appeal (107 Ill. 2d R. 315(a)).

Plaintiff was employed as a laborer by Benchmark Construction Company. Benchmark contracted with the Village to widen the intersections of Route 53, McKinley Avenue, and Burlington Street in Lisle, Illinois. The contract also involved the removal and replacement of the curbs and gutters, and the placement of new sewer and water pipes.

Normally, the carrier delivering the sections of sewer and water pipe to the jobsite would string the pipe sections along the trenches where the sections would be installed. At other times, however, the pipe sections would be stockpiled at one site. On those occasions, an endloader, a dirt-moving vehicle with a shovel-type bucket in front, was used to transport the pipe sections from the stockpile to the place where they were to be installed in the sewer system. After the pipe was delivered, a backhoe would then be used to lower the sections down into the trench.

On the day of the accident the pipe sections had been stockpiled at one site. Plaintiff was assigned to help transport the sections of pipe from the stockpile to the shoulders of the trenches where the sections would be installed, a distance of about one-half block. To accomplish this task, plaintiff and a co-worker attached one end of a wire cable to the endloader's bucket, wrapped the other end of the cable around the middle of a pipe section, and then lifted the bucket so that the section was elevated approximately three to four feet above the ground. Each pipe section was approximately eight feet long and weighed several hundred pounds. As plaintiff's co-worker drove the endloader to the place where the section was to be installed, plaintiff walked ahead of the

endloader and held one end of the pipe section to prevent it from tilting in either direction.

On one trip, when a pipe section had been moved approximately half the distance to its intended destination, plaintiff tripped on an unidentified object. He was then struck by the endloader; its left front wheel came to rest on top of plaintiff as he was lying on the ground. As a result of the incident, plaintiff suffered multiple injuries.

Plaintiff filed a one-count complaint in the circuit court of Cook County against the Village, alleging that the proximate cause of his injuries was a violation of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, pars. 60 through 69). Plaintiff later amended the count to add Novotny, the engineering firm that prepared the drawings, plans and specifications for the repair of the sewer systems, as a defendant. Plaintiff later added a second count to the complaint. The additional count is based on the manufacture and design of the endloader involved in the incident and is not at issue here.

The Village moved for summary judgment, arguing that the endloader, as it was being used at the time of plaintiff's injuries, was not a mechanical contrivance within the meaning of the Structural Work Act. The Village reasoned that the endloader was not being used for the support of tools, equipment, or workers, but rather that the device's sole use at the time of plaintiff's injuries was for the purpose of transporting sections of pipe from one area of the construction site to another. In the alternative, the Village argued that a violation of the statute was not the proximate cause of plaintiff's injuries.

The trial judge granted the Village's motion for summary judgment; the judge determined that the endloader, as it was being used at the time of plaintiff's injuries, was not a device covered by the Structural Work Act. He did not reach the Village's second conten-

tion relating to proximate cause. After the trial judge issued his ruling, Novotny also moved for summary judgment. Finding that the issues raised by Novotny were identical to those addressed by the Village, the trial judge entered an order granting Novotny's motion for summary judgment.

On appeal, the appellate court reversed the judgment of the trial court. Initially, the appellate court addressed the division of authority among the appellate court districts concerning whether the Structural Work Act applies solely to devices that are used to support workers or whether the Act also includes within its coverage devices that are used to support materials. (See generally *Urman v. Walter* (1981), 101 Ill. App. 3d 1085.) The appellate court concluded that the intent of the Act was to provide a cause of action for recovery for injuries caused by the failure of those in charge of construction to provide support for work materials as well as for workers, or for injuries caused by the inadequacy of the support provided. 185 Ill. App. 3d at 207.

Further, the appellate court concluded that whether a specific device is included within the scope of the Structural Work Act is determined by the use to which the device is being put at the time of the incident. (See *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, 1128.) The court found that at the time of the incident the endloader here was being used as a support for construction materials. Based on its conclusions that the Act applies to supports for materials and that the endloader here was being used as a device contemplated by the Act, the appellate court held that the device was a mechanical contrivance within the meaning of the Act. Because it believed that the issue was beyond the scope of the trial judge's ruling, the appellate court declined to consider whether a violation of the Structural Work Act was the proximate cause of plaintiff's injuries.

The Structural Work Act was enacted to provide protection to workers "engaged in extrahazardous work." (*St. John v. R.R. Donnelley & Sons Co.* (1973), 54 Ill. 2d 271, 274.) Section 1 of the Act requires:

"All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1987, ch. 48, par. 60.)

Section 9 of the Act imposes liability on those "in charge of" the construction "[f]or any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions." Ill. Rev. Stat. 1987, ch. 48, par. 69.

In our recent decision in *Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1, we determined that the Structural Work Act applies to devices used for the support of materials as well as to devices used for the support of workers. In *Meyer*, we focused on the language of the statute requiring that the device "be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (See Ill. Rev. Stat. 1987, ch. 48, par. 60.) Because the Act contemplates injuries to persons "passing under or by" hoists, cranes and stays whose primary function is to provide support for materials, we con-

cluded in *Meyer* that the Act applies to injuries caused as a result of the failure to provide support for work materials as well as for workers, and for injuries caused by the inadequacy of the support provided. *Meyer,* 135 Ill. 2d at 13.

We need then only determine whether the use to which the endloader was being put at the time of the occurrence transformed the machine into a mechanical contrivance within the meaning of the Structural Work Act. Defendants renew here their argument below that because the endloader was being used to transport, rather than support, the pipe section, it was not a mechanical contrivance within the meaning of the Act at the time of the occurrence in question. Plaintiff contends that because the endloader elevated the pipe and suspended it against gravity, the endloader was being used as a support for construction materials.

Although the Structural Work Act should be liberally construed to provide protection to construction workers engaged in particularly hazardous activities, this court has recognized that the Act was not intended to cover all construction work. (See *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151; *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 422.) The Structural Work Act, by its terms, requires that the injury involve the use of a scaffold, hoist, crane, stay, ladder, support or other mechanical contrivance before the provisions of the Act apply. See Ill. Rev. Stat. 1987, ch. 48, par. 60.

In analyzing whether a particular device is covered by the Act, "we must ascertain the intended use of the device in question at the time of the injury." (*Vuletich,* 117 Ill. 2d at 422.) Further, the use of a mechanical contrivance at the time of the injury must be such that the device exhibits characteristics similar to scaffolds, hoists, cranes, stays, ladders or supports. (See *Farley v.*

*Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 436 (applying doctrine of *ejusdem generis*).) Thus, if the intended use of the mechanical device at the time of plaintiff's injury was to elevate or provide support for materials, or for persons employed or engaged on the device, it possessed the characteristics that would cause it to be considered a mechanical contrivance within the meaning of the statute.

Plaintiff contends that the endloader was used to support the pipe, a structural material, against gravity and therefore exhibits the characteristics required of a mechanical contrivance under the Act. He likens the endloader, as it was being used here, to a stationary crane, the sole difference being the mobility of the endloader. Plaintiff argues that the Act does not distinguish the vertical transportation of material 75 feet by a crane (*cf. Panteleo v. Gamm* (1969), 106 Ill. App. 2d 116 (hoist that was elevating roofing material to roof of building at the time of plaintiff's injury was a device under the Act)) from the horizontal transportation of that same material for the same distance in the way in which it was transported by the endloader here.

Defendants concede that the endloader lifted the pipe section above the ground and therefore provided support for the material. Defendants, however, point to the statutory provision that requires that the device be erected or constructed "for the use in the erection, repairing, alteration, removal or painting of any house, building, viaduct, or other structure" and cites *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, for the proposition that a device transporting workers or material horizontally from one area of a construction site to another is not engaged in structural work under the Act.

In *Crafton,* the plaintiff sought recovery under the Act for an injury he sustained after falling off a tractor equipped with a 30-foot side boom hoist. At the time of

the accident, the tractor was being used to transport bundles of structural steel from a storage yard to a building site. The bundles were fastened to a cable hoist attached to the tractor and lifted nine inches to two feet above the ground. The plaintiff helped load a bundle of steel onto the hoist, and was injured when the tractor lurched as he was attempting to climb onto the back of the tractor to ride to the building site. In addition to finding that a violation of the Act was not the proximate cause of the plaintiff's injury, the court in *Crafton* concluded: "It is clear from the plain wording of the statute that the Allis-Chalmers tractor simply does no[t] fall within the statute, nor was it the intent of the legislature to cover such a situation. It is difficult for us to understand how, from the plain wording of the statute, the Allis-Chalmers tractor was 'erected or constructed by any person *** for the use in the erection, repairing, alteration, removal or painting of any *** structure.' " 46 Ill. 2d at 537-38.

Without addressing *Crafton*, plaintiff cites *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, and argues that this court should follow the appellate court's decision there. In *Prange*, the court concluded that the Structural Work Act applied to an injury sustained by the driver of a tractor equipped with a forklift while the tractor was transporting several poles used in the construction of a pole barn from a storage area to their place of installation. Each pole was 18 feet long and weighed 300 to 600 pounds. The plaintiff was injured when several poles slid from the forklift onto the operator's compartment while he was raising the forklift device.

We believe that defendants misapprehend our holding in *Crafton*. In *Crafton* this court analyzed the tractor involved as a device that was engaged in the transport of workers and that happened to be equipped with a hoist

and to be carrying a bundle of steel. As we recently stated, "[t]here are certain hazards present on structural work sites which are not unique to the construction industry. These hazards do not fall within the purview of the Structural Work Act merely by virtue of the fact that they are present on a structural work site." (*Meyer*, 135 Ill. 2d at 13.) The routine transport of workers from one location on the construction site to another would not be considered an activity sufficiently unique to the construction industry.

On the other hand, we believe that the transport of the pipe section here, like the transport of the poles in *Prange*, would be considered an activity sufficiently unique to the construction industry. In determining whether a device is covered under the Structural Work Act, a court should look past the mere elevation of the worker or material and consider whether the hazard created by the elevation was one the Act was designed to prevent. (See *Vuletich*, 117 Ill. 2d at 423.) The pipe section involved in the accident here was approximately eight feet long and weighed several hundred pounds. A special device was being used to transport the unwieldy pipe section; the section was suspended by a cable attached to the bucket of a moving endloader. Plaintiff was assigned to walk alongside the endloader to prevent the section from tilting. All of these considerations, in combination, prompt us to believe that the activity here was of a particularly hazardous nature and one that the General Assembly was attempting to alleviate when it passed the Structural Work Act. See *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 450.

Defendants nevertheless attempt to distinguish the device here from the device in *Prange* by noting that the tractor involved there was used to install the poles upon arrival into holes which had been previously dug for that purpose. The defendants reason that because the

endloader was not used in the installation of the pipe sections in the sewer system, it was not used in the construction of the structure. We believe, however, that the danger inherent in the way in which the endloader was used had a peculiar connection with the construction of the structure. The transport of the pipe section from the stockpile to the place where it was to be installed was crucial to the installation of the sewer system and sufficiently unique to a construction site to fall within the coverage of the Act. Moreover, the plaintiff here and the plaintiff in *Prange* were exposed to the same risk inherent in the construction industry at the time of the respective incidents. We do not believe that the General Assembly meant for coverage of the Act to depend on how the device was to be used after the accident occurred.

For the foregoing reasons, we hold that the endloader, as used in this case, was a mechanical contrivance engaging in activity within the contemplation of the Structural Work Act.

Defendants also argue here that a violation of the Structural Work Act was not a proximate cause of plaintiff's injuries. Although raised by defendants in both the appellate and trial courts, neither court decided the issue. Because this issue was not decided in the lower courts, we decline to reach the merits of the argument here. The judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE RYAN, dissenting:

I do not agree that plaintiff's injury falls within the scope of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*). I feel that the majority has needlessly injected confusion into the application of this statute.

Just two terms ago, this court decided *Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1. We there held that in order for a plaintiff's injury to fall within the scope of the Structural Work Act, it must result from the failure of one of the enumerated support devices *while engaged in one of the enumerated structural work activities.* (*Meyer*, 135 Ill. 2d at 13-14.) We defined the limits of the Act's coverage in accordance with its express language. (135 Ill. 2d at 14.) The majority ignores the crux of our opinion in *Meyer*, as well as the sound principles developed in a series of our prior Structural Work Act decisions. The majority has thereby blurred the distinction between those activities which fall within the coverage of the Act and those which do not.

This court has repeatedly observed that while the Act is to be liberally construed to effectuate its purpose of protecting workers engaged in particularly hazardous activities, the Act was not intended to cover any and all construction activities and the hazards attendant thereto. (See, *e.g., Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1, 7-8; *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 422; *Long v. City of New Boston* (1982), 91 Ill. 2d 456, 467-68; *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 536.) A brief review of this court's pertinent Structural Work Act decisions will highlight the flaw in the majority opinion here.

In *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, which the majority here discusses, the plaintiff was injured when he fell off a tractor which was transporting material at a construction site. The tractor had been equipped with a side boom hoist, and at the time of the plaintiff's injury it was being used to transport bundles of structural steel from a storage yard to a building site. After helping to load a bundle of steel onto the hoist, the plaintiff attempted to climb onto the

back of the tractor to ride to the building site. The plaintiff fell and was injured when the tractor lurched. In addition to finding that a violation of the Structural Work Act was not the proximate cause of the plaintiff's injury, this court observed:

"If we interpret the Structural Work Act so that the facts of the instant case are within the Act, such an interpretation would necessarily cover the plaintiff riding on the back of the Allis-Chalmers tractor with a trailer attached to this tractor hauling the structural steel to the construction site rather than with the use of a side boom hoist. We further believe that such an interpretation *** might very well cover the driving of a pickup truck by an employee of the defendant some considerable distance from the actual work site in an attempt to gather materials and bring them back to the construction site itself. Such an interpretation cannot be reached without changing the plain meaning of the Structural Work Act.

*** It is clear from the plain wording of the statute that the Allis-Chalmers tractor simply does no[t] fall within the statute, nor was it the intent of the legislature to cover such a situation. It is difficult to understand how, from the plain wording of the statute, the Allis-Chalmers tractor was 'erected or constructed by any person *** for the use in the erection, repairing, alteration, removal or painting of any *** structure.' " 46 Ill. 2d at 537-38.

In *Long v. City of New Boston* (1982), 91 Ill. 2d 456, the plaintiff, a civic volunteer, fell from a ladder while stringing Christmas lights from a utility pole on a New Boston street. This court held that this occurrence did not fall within the scope of the Structural Work Act. This court there emphasized that the Act "is not applicable to *any* work that requires the use of a ladder. Rather, the Act's application is limited to the use of ladders in performing specified activities upon structures, listed in the statute: 'erection, repairing, alteration, removal or painting ***.' " (Emphasis in original.) (91 Ill.

2d at 466.) This court found that the lights, in combination with the utility pole previously erected for the purpose of transmitting electrical power, did not constitute a structure under the Act. (91 Ill. 2d at 467.) We thus concluded that the plaintiff was not engaged in one of the enumerated structural work activities at the time of his injury. 91 Ill. 2d at 467-68.

In *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, the plaintiff was injured when he slipped and fell on a set of temporary stairs which were covered by ice and snow. This court rejected the plaintiff's argument that his injury was compensable under the Structural Work Act. We there noted that even though the stairs were used to "elevate" workers on a work site, the plaintiff was not engaged in any work that could be described as being of a particularly hazardous nature at the time of his injury. (117 Ill. 2d at 424.) We further observed that under the plaintiff's theory of recovery under the Act, "a mailman who slips and is injured on the icy front steps of one's home would have a cause of action under the Act, as would a janitor or domestic help who falls on stairs while returning a broom to a closet. The protection of the Act should be confined to activities to which it was intended to apply and should not be construed so that every injury suffered on stairs will fall within its purview." 117 Ill. 2d at 424.

In *Meyer*, the plaintiff was working around bundles of steel storage racks which were resting on the ground on their long, narrow edges. Following the unbanding and unbundling of the racks, the racks were to be installed in a warehouse. A bundle of racks fell over and struck the plaintiff, causing him injury. The plaintiff alleged that the failure to provide support for the racks during the unbanding and unbundling process constituted a violation of the Act. We disagreed, concluding that the devices the plaintiff claimed should have been

used to support the racks during the unbanding and unbundling process would not thereby have been engaged in one of the structural work activities enumerated in the Act. We noted, as we had repeatedly in prior cases, that not every hazard present on a structural work site falls within the purview of the Act. (135 Ill. 2d at 13.) We stated that "[t]he boundaries of the Structural Work Act are circumscribed by the language of the Act itself. The device in question must be in use in one of the activities enumerated in the Act at the time of the injury." (135 Ill. 2d at 14.) We further observed that a different result might well have been warranted had the plaintiff's injury resulted from the failure of a device which was actually lifting the racks into position along the walls of the warehouse. (135 Ill. 2d at 15.) But we emphasized that "were we to stretch the language of the statute in order to draw within its coverage activities other than those enumerated in the Act itself, we would expand the scope of the Act beyond what the legislature intended. As a necessary consequence, it would be exceedingly difficult to identify those activities which fall within the Act's coverage and those that do not. [Citations.] A multitude of activities other than those set out in the Act may be performed on a construction site. But we find untenable the proposition that the legislature intended to sweep all such activities from the realm of the common law and into the boundaries of the Structural Work Act." 135 Ill. 2d at 15.

In *Meyer*, we cited the opinion of the appellate court in *Rayfield v. Homart Development Co.* (1981), 100 Ill. App. 3d 620, which summarizes the history and purpose of the Structural Work Act, as well as its relation to the Workers' Compensation Act. The Structural Work Act was enacted in 1907. It was designed to provide a remedy for workers injured while engaged in certain extrahazardous occupations, and insured that the common law

doctrines of contributory negligence and assumption of the risk would not preclude a worker's recovery. The Workers' Compensation Act, enacted four years later, also afforded compensation without regard to contributory negligence. In that respect, therefore, the Workers' Compensation Act served the same purpose as the Structural Work Act. The *Rayfield* court observed:

> "This background of the Structural Work Act demonstrates that the Act is intended to afford injured workers in the construction trades a remedy where none exists, rather than to provide an additional remedy where other *** satisfactory remedies are available. For this reason, we believe that the Structural Work Act should be liberally interpreted where the need for a liberal interpretation reasonably exists to protect and afford relief to injured workers. However, the Act should not be interpreted so that it is extended unnecessarily to cover neoteric theories of liability where the existing workmen's compensation and tort remedies protect and give reasonable and satisfactory relief to construction workers." (100 Ill. App. 3d at 622-23.)

(See *Meyer*, 135 Ill. 2d at 15-16.) It should also be noted that the genesis of comparative negligence in this State (see *Alvis v. Ribar* (1981), 85 Ill. 2d 1; Ill. Rev. Stat. 1987, ch. 110, par. 2—1116) has removed the harsh, all-or-nothing sting of contributory negligence from common law negligence actions.

Against this background, particularly the prior decisions of this court, I cannot see how plaintiff's injury in the present case can be said to fall within the parameters of the Structural Work Act. Plaintiff here was merely engaged in transporting concrete pipe from one area of the construction site to another. Defendants here rely heavily on this court's opinion in *Crafton*. I agree with defendants that *Crafton* is strikingly similar to the present case. The majority, however, attempts to distinguish *Crafton* by simply stating that "[t]he routine trans-

port of workers from one location on the construction site to another would not be considered an activity sufficiently unique to the construction industry." (137 Ill. 2d at 357.) This is a distinction without a difference. The same observation can validly be made of the routine transport of construction materials. In fact, in *Crafton* construction materials were being transported just as in this case. The only difference is that in *Crafton*, the worker was attempting to ride on the tractor whereas, in this case, he was walking beside it.

The majority opts to rely on the appellate court opinion in *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, in which the plaintiff was injured while transporting poles across a construction site to be used in the construction of a pole barn. As in our case, the plaintiff in *Prange* was injured while the poles were merely in transport to the pole barn site. In *Prange*, however, once the tractor-forklift which transported the poles reached the pole barn site, it was then actually used to assist in setting the poles into position in the previously dug holes. This did constitute the erecting of a structure within the meaning of the Act, and this did in fact form a basis for the *Prange* court's holding. (See *Prange*, 109 Ill. App. 3d at 1131.) So, in *Prange*, the "mechanical device" was used in the construction of a structure, though, at the time of injury, it was being used to transport the poles. *Prange* is not on point because, in our case, the endloader was only used to transport the concrete pipe. It was not used to install it in the "structure."

The majority has overlooked this distinction. In *Prange*, the tractor-forklift was performing a dual function, transporting and constructing. In our case the tractor was solely transporting. Another mechanical device was used for the installation of the pipe. There is, in our case, a clear breaking point between activities named in

the Act and other construction-related activities not named in the Act. A line between covered activities and noncovered activities must be drawn at some point. There is a clear breaking point where this line should be drawn in this case. The majority has overlooked this clear breaking point and has construed transportation and construction as one activity, as it could be said to have been in *Prange.*

The majority attempts to justify its reliance on *Prange* by observing that "the plaintiff here and the plaintiff in *Prange* were exposed to the same risk inherent in the construction industry at the time of the respective incidents. We do not believe that the General Assembly meant for coverage of the Act to depend on how the device was to be used after the accident occurred." (137 Ill. 2d at 358.) This is a valid observation, but it is not relevant here because of the rationale of *Long v. City of New Boston* (1982), 91 Ill. 2d 456. The risk inherent in ascending the ladder to string Christmas lights in *Long* was no different from the risk inherent in ascending a ladder to paint a house. In *Long,* this court recognized that in assessing the scope of the Act, it is not sufficient merely to focus upon a risk in the abstract, apart from the context in which the risk presents itself in a particular case. In *Meyer,* we further clarified our constant recognition that not every construction hazard is covered by the Act merely by virtue of the fact that it is present on a construction site, or is in some fashion related to structural work. There are risks inherent in certain construction site activities not enumerated in the Act which are virtually identical to, or even greater than, risks inherent in activities specifically named in the Act. Such activities are not drawn within the scope of the Act by virtue of the fact that they involve risks identical to, or greater than, those activities enumerated in the Act. Indeed, *Crafton, Long* and *Meyer* all teach that

it is usually not very helpful, in the Structural Work Act analysis, to focus on the abstract "risk" to which the plaintiff was exposed. By its terms, the Act does not speak to abstract risks or hazards. It speaks only in terms of certain structural work activities. This court, in descriptive terms, has recognized that those activities involve certain risks. Such risks may well be fairly peculiar to the enumerated activities, but they are by no means unique to structural work. It is clear enough that language in our decisions to the effect that the Act covers certain "particularly hazardous activities" and that the Act addresses risks or hazards which are fairly peculiar or unique to the structural work activities enumerated in the Act is merely descriptive, rather than definitional, of the scope of this statute. The proper focus in the Structural Work Act analysis, therefore, is on the type of *activity* engaged in, not the particular "risk" to which the plaintiff was exposed at the time of the injury. The court may then recognize, consequentially, that the activity in question involves certain risks which the legislature sought to eliminate.

In the present case, there is nothing to suggest that plaintiff was injured as the result of the failure of a device which was setting these pipes into position in the sewer trench. As noted, the endloader here merely transported the pipes from the place where they were stockpiled and set them on the ground near the sewer trench. A backhoe would then lower a pipe into the trench. The endloader was not engaged in any of the activities enumerated in the Act. This then, as noted, is the valid distinction between the present case and *Prange*. In every case it will be necessary to draw the line between activities covered by the Act and those not covered. I emphasize, and this court's prior decisions make clear, that there is absolutely no reason to delineate the boundaries of the Structural Work Act in any

fashion other than that chosen by the legislature when it enacted this statute. In *Prange*, for example, the boundary would be at the point the mechanical device picked up the poles to transport them to and install them in the structure. The majority, apparently, misapprehends the actual function the endloader was serving at the time of plaintiff's injury. The majority overlooks the fact that the endloader was not engaged in the actual installation of the sewer pipes. While I agree that the actual installation of the pipes would fall within the Act, I do not consider the function served by the endloader here to be one of the activities enumerated in the Act. I believe this mistaken view of the facts of this case formed the basis of the majority's holding. The majority cites *Crafton* and *Meyer* and does not profess to overrule those decisions. It has, however, misapplied the clear distinctions defined in those cases and in *Long*.

I am deeply concerned, however, by the majority's failure to grasp the clear import of *Meyer*. The appellate court had not always followed the clear holding of *Crafton* and *Long* as to the limits on the scope of the Structural Work Act. In *Meyer*, we attempted to restate the holding of prior opinions of this court and to end the contrasting broad and narrow interpretation of the Act's language. Focusing on the clear language of the Act, we held, in *Meyer*, that in order to fall within the scope of the Act, the plaintiff's injury must result from a failure of one of the enumerated support devices while engaged in one of the enumerated activities. The majority has overlooked the clear boundaries of the Act's coverage, which we identified in *Meyer* and which appear in the language of the Act.

For essentially two reasons, the majority concludes that plaintiff's injury in the case at bar falls within the scope of the Structural Work Act. First, the majority posits that the "danger inherent in the way in which the

endloader was used had a peculiar connection with the construction of the structure." Second, the majority states that the transport of the pipes was "crucial to the installation of the sewer system and sufficiently unique to a construction site to fall within the coverage of the Act." (137 Ill. 2d at 358.) I thought that this type of an analysis had been abandoned in *Meyer* because it fails to give any meaningful guidance in distinguishing between those activities which fall within the Act's coverage and those which do not. Now, just two terms later, the majority resurrects this approach with all of its attendant chaotic consequences. Under *Meyer* and the previous decisions of this court, the relevant inquiry is not whether the activity was "unique" to construction work, or embraced a danger bearing a "peculiar connection" to construction work, or was "crucial" to construction work, or exposed the plaintiff to a risk similar to those inherent in the activities enumerated in the Act. The only relevant inquiry in this respect is whether the activity in question was one of those activities specifically enumerated in the statute. The majority, however, ignores this critical issue, and addresses instead factors which are of little or no consequence to the proper resolution of this case.

Further, the danger inherent in the way the endloader was used here bore no more "peculiar connection" to any of the enumerated structural work activities than does the use of a crane or a forklift to stack bricks or other materials in the vicinity of a construction site perhaps weeks prior to their use in the construction of a building. Attempting to ascertain the scope of the Act by inquiry into whether the danger involved had a "peculiar connection" to any of the enumerated structural work activities does nothing more than to obscure the boundaries of the Act's coverage. Use of such terminology by this court virtually sanctions remarkable convulsions in

the interpretation of the scope of the Act. I further fail to see how the mere transport of materials, whether they are construction materials or otherwise, from one place to another by use of an endloader is in any way unique to any of the activities enumerated in the statute. As this court simply and aptly stated in *Meyer*, "[s]imilar devices serve similar functions in a myriad of contexts other than structural work." (135 Ill. 2d at 14.) In fact, any farmer with an endloader transports similar material in a similar manner regularly. Finally, the majority relies on the fact that the transport of the pipes was "crucial" to the installation of the sewer system. It is, however, obviously also true that the manufacture and shipping of the pipes were crucial to installation of the sewer system, as was the stockpiling of the pipes at the construction site. The unbanding and unbundling of the steel storage racks in *Meyer* were crucial to the installation of the racks in the warehouse there. The transport of the worker and materials in *Crafton* was crucial to the construction work in that case. The ascent and decent of the steps in *Vuletich* was crucial to the proper performance of the construction worker's tasks there. The manufacture, shipping and stockpiling of lumber, shingles, siding, gutters, bricks, trusses, etc., are all "crucial" to construction activity. Many of these activities may also be said to be fairly unique to the construction industry. None of these activities, however, fall within the scope of the Structural Work Act. This is so not because the activities do not involve risks bearing a "peculiar connection" to structural work, not because they are not "crucial" or "unique" to construction activity, and not because they do not involve risks similar or identical to those inherent in the structural work activities set out in the Act. These activities are not encompassed by the Act quite simply because they do not constitute the "erec-

tion, repairing, alteration, removal or painting" of a structure (Ill. Rev. Stat. 1987, ch. 48, par. 60).

Under the majority's approach, however, there is no logical reason why the Act should not be construed to cover "the driving of a pickup truck by an employee of the defendant some considerable distance from the actual work site in an attempt to gather materials and bring them back to the construction site itself." (*Crafton*, 46 Ill. 2d at 537.) In short, there is no logical limit on the reach of this statute. As we noted in *Meyer*, the legislature, in enacting the Structural Work Act, did not thereby intend to sweep all construction site injuries from the realm of the common law and into the reach of the Act. *Meyer*, 135 Ill. 2d at 15.

As noted above, the boundaries of the Act's coverage must be clearly fixed at some point. I think it prudent to continue to follow *Crafton, Long* and *Meyer*, and to identify those limits precisely where the legislature set them, in the language of the Act itself. The language of the statute and the holdings of *Crafton, Long* and *Meyer* offer a clear objective test, which is much more certain than the nebulous subjective tests discussed above, which were applied by the majority.

If none of the factors relied upon by the majority are relevant to the determination of whether plaintiff's injury falls within the scope of the Act, then the sum of those factors certainly does not justify the result reached by the majority here. Plaintiff here had the benefit of workers' compensation, and an action for common law negligence was available for his protection. As we stated in *Meyer*, "[t]here is just no reason, through the guise of liberal construction, to sweep within the protection of the Structural Work Act plaintiff's activities in this case." 135 Ill. 2d at 17.

The consequences of the majority's adoption of subjective tests are manifest. I fail to see how any injured

construction worker, anyone "having charge of" his work, or any court for that matter, is to determine, with any degree of accuracy, whether or not a particular injury is covered by the Act. Inquiry into whether the activity in question was fairly unique to structural work, or whether it was crucial to structural work, or whether the danger involved bore a peculiar connection to structural work, or whether the risk involved was similar to those inherent in structural work merely clouds the distinction clearly drawn by the legislature. Such inquiry unnecessarily contorts and confuses the only relevant inquiry in this respect: Was the device which caused the plaintiff's injury engaged in one of the activities enumerated in the Act at the time of the injury? If not, further inquiry is neither necessary nor warranted.

For all the reasons set forth above, I dissent.

JUSTICE STAMOS joins in this dissent.